# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

PAUL ERNEST CREE,                         6:16-cv-01719-BR

      Plaintiff,                       OPINION AND ORDER

v.

NANCY A. BERRYHILL,[1]
Acting Commissioner, Social
Security Administration,

      Defendant.

**SARA L. GABIN**
14523 Westlake Drive
Lake Oswego, OR 97035-7700

      Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney

---

    [1] On January 23, 2017, Nancy A. Berryhill was appointed
Acting Commissioner of Social Security and pursuant to Federal
Rule of Civil Procedure 25(d) is substituted as Defendant in this
action.

**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1003

**Michael W. Pile**
Acting Regional Chief Counsel
**JOSEPH K. LANGKAMER**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/A 221A
Seattle, WA 98104
(206) 615-3858

        Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Paul E. Cree seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.


**ADMINISTRATIVE HISTORY**

Plaintiff filed an application for SSI on November 24, 2014,

alleging a disability onset date of April 15, 2010. Tr. 142.[2]
The application was denied initially and on reconsideration. An
Administrative Law Judge (ALJ) held a hearing on March 11, 2016.
Tr. 49-114. Plaintiff was represented by an attorney at the
hearing. Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on June 2, 2016, in which he found
Plaintiff is not disabled and, therefore, is not entitled to
benefits. Tr. 19-40. Pursuant to 20 C.F.R. § 416.984(d) that
decision became the final decision of the Commissioner on
August 3, 2016, when the Appeals Council denied Plaintiff's
request for review. Tr. 1-3. See Sims v. Apfel, 530 U.S. 103,
106-07 (2000).

## BACKGROUND

Plaintiff was born on December 20, 1969, and was 46 years
old at the time of the hearing. Tr. 116. Plaintiff graduated
from high school and subsequently completed a real-estate course.
Tr. 329. Plaintiff has past relevant work experience as a real-
estate broker and leasing agent. Tr. 38.

Plaintiff alleges disability due to attention deficit
disorder (ADD)/attention deficit hyperactivity disorder (ADHD),
bipolar disorder, depression, post-traumatic stress disorder

---

[2] Citations to the official transcript of record filed by
the Commissioner on January 30, 2017, are referred to as "Tr."

(PTSD), personality disorder, and degenerative disc disease.
Pl.'s Opening Br. at 2. *See also* Tr. 21-22, 116, 135.

Except as noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence. After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the
medical evidence. *See* Tr. 21-37.


## STANDARDS

The initial burden of proof rests on the claimant to
establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th
Cir. 2012). To meet this burden, a claimant must demonstrate his
inability "to engage in any substantial gainful activity by
reason of any medically determinable physical or mental
impairment which . . . has lasted or can be expected to last for
a continuous period of not less than 12 months." 42 U.S.C.
§ 423(d)(1)(A). The ALJ must develop the record when there is
ambiguous evidence or when the record is inadequate to allow for
proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d
881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d
453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole. 42
U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.,*

682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential

inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(I). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii). *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a

regular and continuing basis despite his limitations. 20 C.F.R. § 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.,* 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. 20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.,* 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged in
substantial gainful activity since November 24, 2014, the
application date.  Tr. 21.

At Step Two the ALJ found Plaintiff has the severe
impairments of large disc protrusion at the L5-S1 level; bipolar
disorder; ADD/ADHD; PTSD; and alcohol dependence in recent
remission since January 2015.  Tr. 21.  The ALJ found Plaintiff's
bursitis, tinnitus, chronic foot pain, and asthma are nonsevere.
Tr. 22.

At Step Three the ALJ concluded Plaintiff's medically
determinable impairments do not meet or medically equal one of
the listed impairments in 20 C.F.R. part 404, subpart P, appendix
1.  Tr. 26.  The ALJ found Plaintiff has the RFC to perform light
work with the following limitations:  Plaintiff can lift and/or
carry 20 pounds occasionally and 10 pounds frequently; can stand
and/or walk for six hours in an eight-hour work day; can sit for
six hours in an eight-hour work day with normal breaks; can
frequently climb ramps and stairs, stoop, kneel, crouch, and
crawl; can occasionally climb ladders up to 20 feet but never
climb ropes or scaffolds; can perform work involving simple,
routine, and repetitive tasks with a reasoning level of 2 or
less; and can have occasional contact with the public.  Tr. 29.

At Step Four the ALJ found Plaintiff cannot perform any past

relevant work.  Tr. 38.

At Step Five the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy, including "tanning salon attendant" and "electronics worker."  Tr. 39. Accordingly, the ALJ found Plaintiff is not disabled.


## DISCUSSION

Plaintiff contends the ALJ failed to properly consider (1) his subjective symptom testimony and (2) testimony provided by therapist Mary Schalinske and vocational rehabilitation counselor David Hitt.

### I.   Plaintiff's Symptom Testimony

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the

claimant's pain testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id.* The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester,* 81 F.3d at 834).

Here the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were "not entirely consistent with the medical evidence and other evidence of record." Tr. 32. The ALJ's finding was followed by a summary of the evidentiary record highlighting facts that could be construed to undermine Plaintiff's allegations of disabling physical and mental symptoms. Tr. 32-34. The ALJ's summary, however, is almost bereft of meaningful analysis regarding "what testimony is not credible and what evidence undermines the claimant's complaints." *See Parra,* 481 F.3d at 834 (quoting *Lester,* 81 F.3d at 834). For example, following the ALJ's assertion that the alleged symptoms were "not entirely consistent with the medical evidence and other evidence in the record," the ALJ noted Plaintiff's primary-care provider noticed in March 2013 that Plaintiff's appearance had markedly changed since the last time they met in 2011. Tr. 32. The ALJ further reported Plaintiff told treating physician Nemecia

Salindong-Dario, M.D., that he had been "struggling with depression, involved in a custody proceeding related to his child, [] he was separated from his wife . . . [and he] was also in 'fairly tough financial straits.'" *Id.* Presumably with these facts the ALJ was implying that Plaintiff's limited functioning was due at least in part to personal circumstances aside from his mental or physical impairments; namely, stress due to family difficulties and possible pecuniary motivation. The ALJ, however, failed to identify what testimony or symptom allegations were undermined by the cited facts. *See Bunnell*, 947 F.2d at 345-46 (ALJ findings must be "sufficiently specific to allow a reviewing court to conclude adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony.").

By merely stating Plaintiff's symptom allegations were inconsistent with the evidence and reciting a laundry list of facts, the ALJ failed to connect the evidentiary record to Plaintiff's testimony. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)(citing *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014)). Moreover, after the administrative hearing but before the date of the ALJ's decision, the Social Security Administration enacted SSR 16-3p (superseding SSR 96-7p). SSR 16-3p, effective March 28, 2016, clarifies that ALJs "must limit their evaluation to the individual's statements about his or her

symptoms and the evidence in the record that is relevant to the individual's impairments." *Id.,* at *11. In addition, SSR 16-3p states: "[O]ur adjudicators will not assess an individual's overall character for truthfulness in the manner typically used during an adversarial court litigation." *Id.* Thus, SSR 16-3p eliminates the use of the term "credibility" in symptom assessment and stresses "subjective symptom evaluation is not an examination of an individual's character." *Id.,* at *2.

Although the ALJ appeared to be aware of SSR 16-3p insofar as he did not make an overarching finding as to Plaintiff's credibility *per se*, the ALJ essentially rendered a *de facto* overarching credibility finding by making a boilerplate statement that Plaintiff's symptom allegations were "not entirely consistent" with the evidentiary record while failing to specifically link any of his findings to particular testimony, which is clearly contrary to the guidance set forth in SSR 16-3p.

The Court notes the Commissioner does not respond to Plaintiff's assignment of error regarding the ALJ's finding as to familial and financial struggles. *See* Def.'s Br. at 2-5. Instead the Commissioner asserts Plaintiff does not have any basis to challenge the ALJ's assessment of his subjective complaints, notes the Court may not engage in second-guessing, and points out "several valid reasons" why the ALJ did not accept Plaintiff's symptom allegations by directing the Court to an

undifferentiated citation to seven pages of the ALJ's decision.
Def.'s Br. 2 (citing Tr. 30-37). The examples the Commissioner
identifies generally suffer from the same deficiency: The
ALJ, as noted, often did not link facts to specific symptom
allegations. *See Brown-Hunter*, 806 F.3d at 494. For example,
the Commissioner argues the ALJ discounted Plaintiff's subjective
complaints because Plaintiff stopped working for reasons other
than his medically determinable impairments. Def.'s Br. 2. The
ALJ, however, merely recited Plaintiff told a social worker that
he was unemployed because he had failed four times at running his
own business. Tr. 34. The ALJ did not provide any further
analysis and did not expressly find Plaintiff's entrepreneurial
failures contradicted any of his symptom allegations. Tr. 34.
Although the Court is aware an ALJ may discount a claimant's pain
complaints as not credible when the claimant's employment ends
for reasons unrelated to disability, here the ALJ did not
identify the parts of Plaintiff's testimony that he found to be
not credible. *Cf. Bruton v. Massanari*, 268 F.3d 824, 828 (9th
Cir. 2001)(in addition to two other reasons, the court found
Bruton's pain complaints not credible because he continued
working until he was laid off despite a workplace injury).
Moreover, there is some question whether Plaintiff's multiple
mental impairments factored into his inability to sustain self-
employment. Thus, the ALJ's analysis on this issues falls well

short of the clear-and-convincing legal standard.

Plaintiff also argues the ALJ impermissibly rejected his symptom testimony because of episodes of Plaintiff's alcohol abuse and DUI convictions. Pl.'s Br. at 15. The Commissioner does not respond to this assignment of error. *See* Def.'s Br. 1-5. The ALJ found Plaintiff "used illicit drugs and alcohol excessively during much of the adjudicatory period . . . [and] is doing better without the drugs and alcohol, which further suggests he can work and that this substance use could have been part of the reason he has remained unemployed." Tr. 37. Although the ALJ's statement may be true, it does not explain why Plaintiff's symptoms are not "consistent with the medical evidence and other evidence of record." Tr. 32. The record reflects Plaintiff was generally forthright about his substance use, including detailed and candid testimony at the hearing. Tr. 55-56, 58, 69-77. Accordingly, it appears the ALJ's finding was essentially arbitrary. *See Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004)(ALJ erred when he did not make any "findings that would allow [the court] to conclude that he rejected the testimony on permissible grounds.").

Moreover, in the context of substance use, the Social Security Act dictates an ALJ's duty is to determine first whether Plaintiff is disabled considering all of his impairments, including drugs or alcohol, and then determine whether, in the

absence of such use, Plaintiff would still be disabled. *See*
SSR 13-02p. *See also Parra*, 481 F.3d at 748-50. Thus, the drug
addiction and alcoholism (DAA) analysis allows an adjudicator to
determine whether substance use is a material contributing factor
to a claimant's disability. *Id.* Although the full DAA analysis
was not triggered here because Plaintiff was found to be "not
disabled," it was improper for the ALJ to circumvent the DAA
analysis by merely assuming substance use rendered Plaintiff's
symptom testimony "inconsistent" with the medical evidence.
Instead, after finding at Step Two that alcohol dependence in
recent remission was a severe impairment, the ALJ failed to
consider whether it rendered Plaintiff disabled during the
adjudicatory period and then failed to perform the
differentiating analysis. Tr. 21. *See* SSR 13-2p. Thus, the ALJ
improperly considered Plaintiff's history of substance use.

Plaintiff also argues the ALJ impermissibly impugned
Plaintiff's symptom testimony by observing that Plaintiff told
his therapist that he would like to find stable housing and to
begin looking for a job. Tr. 33, 1115. Once again the ALJ did
not draw an express conclusion regarding this evidence, but one
might infer the ALJ was attempting to establish that the
Plaintiff believed he was able to work. *See, e.g.*, *Copeland v.*
*Bowen*, 861 F.2d 536, 542 (9th Cir. 1988). As noted earlier,
however, there is not a clear inconsistency: Plaintiff

acknowledged he would be able to work on a part-time basis, but he felt his impairments would likely prevent him from doing sustained, full-time work. Tr. 83-84, 86-87, 94-95. The Commissioner does not address Plaintiff's argument on this issue, and, therefore, because the Court does not identify any clear inconsistency, the ALJ's reasoning fails.

The ALJ dedicated a significant part of his decision to summarizing an investigation by the Cooperative Disability Investigation Unit (CDIU), which sent an undercover agent in 2013 to determine whether Plaintiff was attempting to obtain benefits fraudulently. Tr. 34, 37, 760-70. Again, because the ALJ did not make any specific finding regarding the investigation, the agency's purpose is difficult for the Court to discern on review. *See Moisa*, 367 F.3d at 885. *See also Brown-Hunter*, 806 F.3d at 492 (ALJ findings must be sufficiently specific to allow the reviewing court to conclude that the testimony was rejected on permissible grounds).

When the ALJ summarized the CDIU report, he noted Plaintiff did not have any ambulation issues, appeared to be pain-free, was able to sit and to stand for a lengthy period, was well-groomed, and exhibited adequate concentration and focus despite occasional tangential thoughts. Tr. 34. Because the report indicates Plaintiff did not exhibit any pain symptoms or exhibit difficulty or discomfort in sitting, standing, or walking, the ALJ did not

err to the extent that he invoked the CDIU investigation as evidence that Plaintiff's back symptoms were not as severe as alleged. Tr. 34. These observations are self-evident, and, accordingly, the ALJ did not err to the extent that he found them inconsistent with Plaintiff's allegations of back pain and impairment.

There is nothing in the CDIU report, however, that indicates the investigator was qualified to assess the severity of Plaintiff's waxing and waning mental impairments absent clinical testing. *See Garrison v. Colvin*, 759 F.3d 995, 1071 (9th Cir. 2014)(ALJ should not cherry-pick instances of decreased psychological symptoms in the context of long-standing mental-health issues.). In fact, ALJs routinely discount state-certified treatment providers who have an established history with a claimant because they purportedly lack the training to provide a probative medical opinion. *See, e.g., Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017)("The Social Security regulations provide an out-dated view that considers a nurse practitioner as an "'other source.'"). In addition, to the extent that the ALJ implicitly credited the CDIU investigator's observations and opinions regarding Plaintiff's mental limitations more than those of Plaintiff's treating and examining providers, the ALJ failed to provide any reasons for doing so. Although the CDIU agent's opinion is probative as lay-witness

testimony, the ALJ's mere restatement of the CDIU report does not represent a clear-and-convincing reason to discredit Plaintiff's symptom testimony overall, especially in light of the ALJ's findings at Step Two that Plaintiff's mental impairments are severe. The Commissioner's general argument that the undercover agent's observations were "inconsistent with Plaintiff's allegations about experiencing debilitating impairments" is no more specific than the ALJ's overly broad findings. *See* Def.'s Br. 4.

Despite the ALJ's vagueness regarding his analysis of Plaintiff's allegations as to his mental-health symptoms, the ALJ provided some basis for rejecting Plaintiff's allegation of disabling back pain. For example, although Plaintiff alleged "new-onset" back pain in July and August 2010, Plaintiff's physical examinations were largely normal. Plaintiff also reported he had been able to perform heavy lifting on more than one occasion, which is inconsistent with his allegation that his back pain precludes him from performing all unskilled work. Tr. 32. *See also* Tr. 62 (Plaintiff does "not know how to accommodate [his] physical pain" in any job); Tr. 69 (Plaintiff alleges he cannot sit, stand, or walk for more than 20 minutes due to back pain). The ALJ further found Plaintiff's allegations as to his back pain were inconsistent with his unremarkable clinical examinations in June 2011 despite a bike crash; in

November 2013 despite having fallen down an embankment and presenting at the emergency room while intoxicated with alcohol; and in 2014 when his primary complaint was tinnitus rather than back pain following a car accident. Tr. 32-33, 37, 539-40, 547-48, 551-52, 742-43, 782. In addition, a treating physician, Reween D'Souza-Kamath, M.D., did not find Plaintiff's back-pain complaints were related to his L5-S1 disc protrusion. Tr. 786-87. Thus, the ALJ adequately identified several instances when the objective medical evidence was inconsistent with Plaintiff's allegations of disabling back pain. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)(ability to perform variety of daily activities undermines allegations of disabling pain).

The ALJ also identified substantial evidence that Plaintiff's back pain allegations were inconsistent with his activities of daily living (ADLs). Specifically, the ALJ noted Plaintiff was able to paint a house (albeit with pain), could move heavy appliances, rode his bike, and frequented Karaoke establishments despite his allegations of debilitating back pain. Tr. 37. Although Plaintiff dismisses these ADLs as merely "making an effort to live normally," the ALJ reasonably construed these activities as inconsistent with allegations of disabling back pain.

In summary, the Court concludes on this record that the ALJ properly provided legally sufficient reasons to reject

Plaintiff's back pain allegations. The Court, however, concludes on this record that the ALJ failed to provide legally sufficient rationales for rejecting Plaintiff's allegations of waxing and waning mental symptoms over several years despite substantial evidence in the record.

## II. "Non-Acceptable" Medical Source Testimony

Medical sources are divided into two categories: "acceptable" and "not acceptable." 20 C.F.R. § 416.902. Acceptable medical sources include licensed physicians and psychologists. 20 C.F.R. § 416.902. Medical sources classified as "not acceptable" include, but are not limited to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors. SSR 06-03p, at *2. The Social Security Administration notes:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not acceptable medical sources, such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed acceptable medical sources under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

SSR 06-03p, at *3. Factors the ALJ should consider when determining the weight to give an opinion from those "important" sources include the length of time the source has known the

claimant and the number of times and frequency that the source
has seen the claimant, the consistency of the source's opinion
with other evidence in the record, the relevance of the source's
opinion, the quality of the source's explanation of his opinion,
and the source's training and expertise. SSR 06-03p, at *4. On
the basis of the particular facts and the above factors, the ALJ
may assign a not-acceptable medical source either greater or
lesser weight than that of an acceptable medical source. SSR 06-
03p, at *5-6. The ALJ, however, must explain the weight assigned
to such sources to the extent that a claimant or subsequent
reviewer may follow the ALJ's reasoning. SSR 06-03p, at *6. In
order to reject the opinion testimony of a non-acceptable medical
source, the ALJ must provide reasons germane to the source.
*Molina*, 674 F.3d at 1111.

As noted, Plaintiff contends the ALJ erred in his evaluation
of the lay testimony provided by treating therapist Mary
Schalinske, Q.M.H.P., and vocational rehabilitation consultant
David Hitt.

As a qualified mental-health provider, Schalinske is
considered a non-acceptable medical source under the regulations.
Plaintiff saw Schalinske at Sequoia Mental Health for more than
one year, and she rendered an opinion on Plaintiff's status on
April 19, 2016. She concluded Plaintiff would have difficulty
staying on task due to ADHD symptoms; has memory problems,

difficulty with structure and organization, and interpersonal relationship issues; and would have excessive absenteeism in a workplace setting. Tr. 1135-36. The ALJ gave Schalinske's opinion little weight and found her testimony was inconsistent with the CDIU report, examination findings, the vocational assessment of consultant Hitt, and the progress notes of Dr. Salindong-Dario. Tr. 37.

Plaintiff contends the ALJ failed to evaluate Schalinske as a treating medical source pursuant to 20 C.F.R. § 416.927©) (2)-(6). The regulation directs the ALJ to consider the treatment relationship, including length of treatment, nature and extent of treatment, the supportability, the consistency, and the provider's particular area of specialty. *Id.* *See also* SSR 06-03p.

The ALJ acknowledged Schalinske treated Plaintiff, but he found her opinion was inconsistent with other evidence. Tr. 33-34, 37. The ALJ noted three months before Schalinske rendered her opinion that Dr. Salindong-Dario indicated Plaintiff was "doing well"; namely, Plaintiff had arrived on time, had fair grooming and hygiene, had bright affect, and appeared to be cooperative and compliant with medications. Tr. 37. The ALJ's finding, however, refers only to a single chart note, which does not adequately account for the waxing and waning of Plaintiff's psychiatric symptoms. *See Garrison*, 759 F.3d at 1017. Indeed,

Dr. Salindong-Dario found Plaintiff's affect was sad two months before, and he noted Plaintiff had racing thoughts and psychotic features. Tr. 1097. The prior month Dr. Salindong-Dario reported Plaintiff's mood was good, but Plaintiff's thinking was with "questionable auditory hallucinations." Tr. 1096. Thus, the record was mixed.

Dr. Salindong-Dario's chart notes are brief. Although they discuss some aspects of Plaintiff's mental-health issues, they do not directly contradict Schalinske's findings, which specifically contemplated Plaintiff's prognosis in a workplace setting. Moreover, Dr. Salindong-Dario expressly endorsed Schalinske's opinion by co-signing it. Tr. 1136.[3] Thus, the Court does not find any inconsistency with Dr. Salindong-Dario's opinion.

The ALJ also rejected Schalinske's medical opinion because it was not consistent with the CDIU investigation report. As noted, however, the CDIU investigator was not qualified to render a medical opinion as to Plaintiff's mental impairments, and, in any event, the ALJ failed to explain how or why the investigator's observations contradicted Schalinske's conclusions as to Plaintiff's limitations. Moreover, the ALJ erred when he

---

[3] The Court notes the Ninth Circuit has held when a treating "non-acceptable medical source" works closely with and under the supervision of a doctor, the "non-acceptable" source's opinion should be considered as if it were from an "acceptable medical source." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011). This principle must be applied on remand.

accorded more weight to the opinion of a nontreating lay witness who was unqualified to render medical opinions and who observed Plaintiff for one hour rather than to the opinion of a treating, certified mental-health professional that was co-signed by a treating doctor. *See* 20 C.F.R. § 416.927©)).

Similarly, the ALJ's finding that Schalinske's opinion was inconsistent with the evaluation of vocational rehabilitation counselor Hitt is not supported. The ALJ did not identify how or why the evaluations were inconsistent, and the Court, after reviewing the record, does not find any notable contradictions. *Compare* Tr. 343-53 with Tr. 1135-36.

Finally, the ALJ rejected Schalinske's opinion on the basis that it "seem[ed] to be based primarily on reports from the claimant." Tr. 37. The Ninth Circuit has recently held it is error in the context of a mental impairment to reject an opinion merely because it is based on a claimant's self-reporting of symptoms. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017).

Accordingly, the Court concludes the ALJ erred when he rejected Schalinske's opinions because the ALJ failed to provide legally sufficient reasons supported by substantial evidence in the record for doing so.

## III. Other Testimony

Lay-witness testimony regarding a claimant's symptoms is

24 - OPINION AND ORDER

competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). When "the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Plaintiff contends the ALJ erred in his evaluation of the April 1, 2014, report produced by vocational rehabilitation counselor Hitt. *See* Tr. 343-53, 405-15 (duplicate record); Tr. 416-20. Because Hitt is not a medical professional, he is considered a lay witness under the regulations.

Hitt provided a lengthy and thorough analysis of Plaintiff's life and work history, a psychological assessment, and several vocational factors. Tr. 416-20. Hitt was unable to complete the assessment because Plaintiff did not provide some of the assigned

25 - OPINION AND ORDER

assessment tools. Tr. 415. Hitt concluded even though Plaintiff historically was motivated to work, he was "de-motivated emotionally and personally" (which Hitt distinguished from being "unmotivated"). Tr. 415. Hitt found Plaintiff was not sufficiently reliable and/or dependable to sustain work. Tr. 416. He also opined although Plaintiff possessed a "relative strength" in social maturity, it was difficult to determine whether Plaintiff could set realistic goals. Tr. 415. Even though Plaintiff's degree of initiative was considered strong historically, it was waning due to his lack of self-confidence and dependence on others. *Id.*

The ALJ summarized Hitt's findings, but he did not indicate how much weight he gave to Hitt's opinion. Tr. 31. As noted, the ALJ did not suggest any of Hitt's findings contradicted those of Schalinske. Tr. 31. In fact, the only finding the ALJ made with regard to Hitt's report was that it supported "limiting the claimant to simple and repetitive tasks." Tr. 31.

Plaintiff asserts the ALJ accorded little weight to Hitt's opinion because it was premised on Plaintiff's subjective reports. Pl.'s Br. 19-20. The Court, however, is unable to find support in the record for Plaintiff's assertion.

On the other hand, the Commissioner argues the ALJ ultimately accounted for Hitt's findings by limiting Plaintiff to simple work with occasional contact with the public. Def.'s Br.

8-9. *See also* Tr. 29. The Court, however, finds the
Commissioner's argument that the "occasional contact with the
public" limitation was derived from Hitt's report is unsupported
by the record. Moreover, although the ALJ could infer
Plaintiff's inability to handle stressful work situations limited
him to simple and repetitive work, the ALJ, nevertheless,
disregarded without comment Hitt's opinion that Plaintiff would
be unlikely to sustain employment due to his issues with
reliability and dependability. Tr. 353. Because it appears the
ALJ generally found Hitt's testimony to be probative, the ALJ
erred by implicitly rejecting Plaintiff's limitations as to
reliability and dependability, which would necessarily prevent
him from sustaining even simple, repetitive work.

Accordingly, the Court concludes the ALJ erred when he
rejected a key part of Hitt's opinion because the ALJ did not
provide a legally sufficient reason supported by the record for
doing so.

## IV. Remand

The decision whether to remand for further proceedings or
for immediate payment of benefits generally turns on the likely
utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172,
1179 (9th Cir. 2000). When "the record has been fully developed
and further administrative proceedings would serve no useful
purpose, the district court should remand for an immediate award

of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The Court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting . . .
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

The ALJ's reversible errors include his improper evaluation of Plaintiff's subjective symptoms relative to his mental impairments and failure to provide legally sufficient reasons for rejecting the limitations set out by Schalinske and Hitt. Because the Court does not find error in the ALJ's evaluation of

Plaintiff's physical impairments, however, it is unclear whether Plaintiff's mental impairments alone would render him disabled under the Social Security Act. In addition, outstanding factual issues remain as to the impact of substance use on Plaintiff's mental impairments throughout the adjudicatory period. The Court, therefore, remands this matter for the ALJ to conduct further administrative proceedings consistent with this Opinion and Order and, specifically, to reevaluate the severity and functionally limiting effects of Plaintiff's mental impairments. The ALJ also must provide legally sufficient reasons to reject Plaintiff's subjective symptom testimony and, if applicable, the testimony provided by Schalinske and Hitt.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this ⟨22nd⟩ day of January, 2018.


_____
ANNA J. BROWN
United States Senior District Judge